**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    Chapter 7

ROBERT W. SZOSTAK                                         Case No. 22-11098-MAM

                    Debtor.
_____/

MICROBILT CORPORATION and PRINCETON
ALTERNATIVE FUNDING, LLC,                                 Adv. No.

                    Plaintiffs,
v.

ROBERT W. SZOSTAK

                    Defendant.
_____/

**VERIFIED COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR AND**
**DISCHARGEABILITY OF DEBT**

Plaintiffs MicroBilt Corporation and Princeton Alternative Funding, LLC (together,

"Plaintiffs"), by and through their undersigned counsel, brings this Complaint against the above-

captioned defendant, and in support thereof respectfully allege and represent as follows:

**JURISDICTION AND VENUE**

1.      This is an adversary proceeding commenced pursuant to sections 523 and 727 of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Federal

Rules of Bankruptcy Procedure (the "Rules") 4004 and 7001.

2.      The jurisdiction of this Court is founded upon §§ 28 U.S.C. 157(a), 157(b), and

1334 because this adversary proceeding is a core proceeding that arises in or arises under the

chapter 7 case of the Debtor now pending in the United States Bankruptcy Court for the Southern District of Florida.

3.     Venue of this proceeding in this Court is proper pursuant to 28 U.S.C. § 1409.

4.     The statutory predicate for this adversary proceeding are sections 523 and 727 of the Bankruptcy Code and Rules 7001 and 7007.

## PARTIES

5.     Plaintiff MicroBilt Corporation ("MicroBilt") is a Delaware corporation with a principal place of business located at 100 Canal Point Blvd., Princeton, New Jersey 08540.

6.     Plaintiff Princeton Alternative Funding, LLC f/k/a MicroBilt Capital Funding, LLC ("Successor PAF"), is a Delaware limited liability company, and successor-in-interest to Princeton Alternative Funding, LLC ("PAF"), a Delaware limited liability company formed on August 29, 2014.

7.     Robert W. Szostak ("Debtor") is an individual residing at 3191 South Dixie Highway, Apt. 515, West Palm Beach, FL 33405, and a former Managing Member of PAF, and a former equity holder in Successor PAF.

## NON-PARTIES

8.     Robert Farrell ("Farrell") is an individual residing at 10 Darvel Drive, West Windsor, NJ, and a former Managing Member of PAF, and a former equity holder in Successor PAF.

## FACTUAL BACKGROUND

**A.     The Debtor filed a Frivolous Complaint against the Plaintiffs**

9.     On January 25, 2016, Debtor and Farrell instituted an action (the "Debtor NJ Action") by filing a complaint (the "Debtor Complaint") against MicroBilt, PAF, and the other

defendants (the "NJ Action Defendants") in both their individual capacity and derivatively on behalf of PAF in the Superior Court of New Jersey, Chancery Division (the "NJ Court"), which was administered at Case No. L-675-20.

10.     The Debtor Complaint was a willful, intentional, and malicious attempt to injure Plaintiffs.

11.     On June 3, 2020, the NJ Action Defendants moved to dismiss the Debtor Complaint on the grounds that the Debtor Complaint was frivolous.

12.     On August 10, 2020, the Debtor NJ Action was consolidated with Case No. C-6-16.

13.     On August 11, 2020, the NJ Court dismissed the Debtor Complaint.

**B.      The NJ Court Sanctioned Debtor for his Frivolous Complaint**

14.     On December 2, 2016, the NJ Court entered the *Order Granting Defendants' Motion for Attorneys' Fees* (the "Attorneys' Fees Order").

15.     A true and correct copy of the Attorneys' Fees Order is attached hereto as **Exhibit A.**

16.     Pursuant to the Attorneys' Fees Order, the NJ Court ordered that Farrell and the Debtor pay the NJ Action Defendants' reasonable attorneys' fees in the amount of $5,250.

17.     The relief provided in the Attorneys' Fee Order was entered pursuant to N.J. Stat. § 2A:15-59.1.

18.     Attorneys' fees awarded are awarded pursuant to N.J. Stat. § 2A:15-59.1 "if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."

19.     N.J. Stat. § 2A:15-59.1(b) provides that:

(b) In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:

    (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

    (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

20.      Debtor has not complied with the Attorneys' Fees Order because he has not paid $5,250 to the Plaintiffs.

## C.      The Plaintiffs filed Counterclaims against Debtor

21.      On March 31, 2020, MicroBilt and PAF filed counterclaims against Debtor and Farrell in the Debtor NJ Action.

22.      On October 5, 2022, MicroBilt and PAF filed *Defendants' Second Amended Counterclaims* (the "Counterclaim Complaint"),[1] which asserts counterclaims against Debtor and Farrell (the "Counterclaims").

23.      A true and correct copy of the Counterclaim Complaint is attached hereto as **Exhibit B**.

24.      The Counterclaims against Debtor arose out of Debtor's fraudulent, willful, intentional and malicious conduct in an attempt to injure Plaintiffs, including making false statements to a federal regulatory agency.

25.      The allegations in the Counterclaim Complaint, include, but are not limited to:

---

[1] Microbilt and PAF subsequently filed *Defendants' Third Amended Counterclaim*, which was filed under seal. There is a pending motion by Microbilt and PAF to unseal the case at which time Plaintiffs can supplement this Complaint with the most recent Counterclaim Complaint.

a.  Debtor breached the confidentiality obligations in a nondisclosure agreement, by misusing confidential information in his new endeavor and failing to return or destroy it;

b.  Debtor conspired with PAF's investors to create spreadsheets that were knowingly false and represented to PAF members and officers, that PAF had not extended credit facilities to any single loan originator in excess of $4 million;

c.  Debtor also used the fraudulent spreadsheets to induce PAF to fund loans originated by the Argon Credit subsidiaries, in amounts that were far in excess of the amounts Argon Credit should have reasonably been able to borrow;

d.  Debtor contacted the SEC and made knowingly false statements about PAF and PAF's operations which were designed to harm PAF, its officers and its employees and to conceal Debtor's fraudulent and wrongful action in connection with the Argon Credit loans and oversight of such loans; and

e.  As a result of Debtor's actions in creating knowingly false spreadsheets, circulating them to PAF and PAF's officers and telling lies to the SEC in a whistleblower action, PAF has been damaged by approximately $30,000,000 and Microbilt has suffered legal fees in excess of $12,000,000.

26.     The Counterclaims Complaint seeks damages and equitable relief as a result of Debtor's (1) tortious interference with contract and prospective economic advantage, (2) breach of duty of loyalty, (3), common law misappropriation of trade secrets, (4) breach of nondisclosure agreement, and (5) fraud.

**D.     Sanctions Orders**

27.     Debtor engaged in willful and intentional, fraudulent and malicious misconduct with regard to and throughout the discovery process in the Debtor NJ Action and the Counterclaims.

28.     Plaintiffs incurred damages as a result of the Debtor's discovery misconduct.

29.     Debtor and Farrell refused to produce electronic data sources, which was a willful, intentional and malicious attempt to injure Plaintiffs.

30.    Debtor's refusal to produce his electronic data sources forced Plaintiffs to seek relief from the NJ Court.

31.    On December 17, 2021, the NJ Court entered the *Order to Compel Production of Robert Farrell's And Robert Szostak's Electronic Data Sources for a Forensically Sound Inspection and Collection By an Independent Forensic Firm* (the "Order to Compel").

32.    A true and correct copy of the Order to Compel is attached hereto as **Exhibit C.**

33.    Pursuant to the Order to Compel, the NJ Court compelled Farrell and Debtor to produce their electronic data sources for a forensically sound inspection and collection by a forensic firm.

34.    Pursuant to paragraph 7 of the Order to Compel, the NJ Court will address the parties' responsibility for the costs associated with the inspection at the conclusion of the case.

35.    Debtor also filed a motion to shift the costs of an independent forensic search to Plaintiffs.

36.    Debtor's motion to shift costs was a willful, intentional and malicious attempt to injure Plaintiffs.

37.    On February 4, 2022, the NJ Court entered an order denying Farrell and Debtor's motion to shift costs of an independent forensic search (the "Forensic Search Costs Order").

38.    A true and correct copy of the Forensic Search Costs Order is attached hereto as **Exhibit D.**

39.    Plaintiffs incurred costs, including attorneys' fees, in connection with opposing Debtor's motion to shift costs.

**E.    The Bankruptcy Case**

40.     On February 11, 2022, Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

41.     The Petition included Debtor's Statement of Financial Affairs (the "SOFA") and Schedules A through J (the "Schedules").

42.     Debtor signed the SOFA under penalty of perjury as true and accurate.

43.     Debtor signed the Schedules under penalty of perjury as true and accurate.

44.     In the SOFA and Schedules, Debtor makes sworn representations regarding his assets.

45.     In the SOFA, Debtor discloses that he collected unemployment in the amount of $19,400 for the 2020 calendar year and $19,347 for the 2021 calendar year.

46.     Plaintiffs are informed and believe that Debtor was collecting unemployment from the State of New Jersey while residing in Florida.

47.     Plaintiffs are informed and believe that Debtor did not qualify for unemployment when he was collecting it while residing in Florida.

48.     Plaintiffs are informed and believe that Debtor's wife and daughter were also collecting unemployment from the State of New Jersey while residing in Florida, despite neither being qualified to do so.

49.     In the Schedules, Debtor discloses three bank accounts: a PNC account, TD Ameritrade account, and a TD Bank account.

50.     Plaintiffs are informed and believe that Debtor, as well as the Debtor's wife and Debtor, deposited the improperly obtained unemployment funds into a Bank of America bank account, in an attempt to conceal such funds.

51.     Plaintiffs are informed and believe that Debtor concealed his improper unemployment funds from the Bankruptcy Court as well as the Bank of America bank account.

52.     Debtor is, or was, an owner of Lead Hero LLC ("Lead Hero"), a New Jersey Limited Liability Company.

53.     Lead Hero was formed on February 5, 2019.

54.     A true and correct copy of the Lead Hero's Certificate of Formation is attached hereto as **Exhibit E**.

55.     Upon information and belief, Debtor was CEO of Lead Hero until at least May 20, 2020.

56.     Moreover, Lead Hero has potential assets of its own, including a website, domain, and computers and related equipment.

57.     The Schedules require Debtor to disclose "Non-publicly traded stock and Interests in Incorporated and unincorporated businesses, including an Interest in an LLC, partnership, and joint venture."

58.     Debtor did not disclose his ownership in Lead Hero on the Schedules, thereby concealing his interest in Lead Hero from the Bankruptcy Court.

59.     In addition, the SOFA requires Debtor to disclose, within 4 years before filing for bankruptcy, ownership interests or connections to certain businesses.

60.     Debtor did not disclose his ownership in, or managerial position of, Lead Hero on the SOFA, thereby concealing his interest in Lead Hero from the Bankruptcy Court.

61.     Notably, Debtor acknowledged his failure to disclose his ownership in Lead Hero as well as his other historic and current officer positions at the 2004 Exam (as defined and discussed below).

62.     Moreover, Plaintiffs have not been able to fully investigate other relevant omissions and misstatements regarding the Petition, SOFA, and/or Schedules due to the Debtor's delinquencies in responding to discovery requests that have, in turn, necessitated the numerous extensions of the deadlines for objecting to the Debtor's discharge and dischargeability of Plaintiff's debts.[2]

63.     Despite having filed the *Notice of Rule 2004 Exam* (the "2004 Exam")  [Doc. No. 44] on May 31, 2022, on at least six (6) requests by Debtor's counsel for the need to delay and reschedule both an examination of the Debtor and the production of requested documents, Plaintiffs were only able to complete a preliminary 2004 Exam of the Debtor on February 9, 2023.

64.     Further, certain critical documents requested pursuant to the 2004 Exam have still not been produced despite numerous requests by Plaintiffs and representations by Debtor's counsel that such documents would be produced as requested.   Specifically, Plaintiffs have made at least fifteen (15) inquiries as to the document production from July 2022 through February 2023—each time met with a request for an extension, an unresponsive answer, or no response at all.

65.     As a result of the Plaintiff's diligence – and despite the Debtor's delinquencies – the Plaintiffs were able to undertake a preliminary examination.  During that examination, the Debtor conceded that (i) he did not disclose his ownership in Lead Hero LLC, (ii) he did not disclose historic and current positions – including a Chief Executive Office Position he held immediately prepetition and during his Chapter 7 case; and (iii) he collected employment compensation from the State of New Jersey, while he was a resident of the State of Florida; and

---

[2] As a result of the Debtor's delinquencies in production in response to the pending 2004 Exam (served in May), the discharge and dischargeability deadlines have been extended seven (7) times by agreed *ex parte* motion. *See* Doc. Nos. 49, 52, 56, 63, 72, 80, and 82. Despite the Debtor's ongoing delinquencies, the Debtor would not consent to a further extension.  As a result, the Plaintiffs filed this Complaint with full reservation of rights to modify the allegations herein as additional discovery is produced or ordered.

(iv) he used the services of a non-Florida licensed lawyer to prepare his bankruptcy papers (who was also responsible for various other questionable "corporate" transactions); and (v) in his officer and owner positions (which were not disclosed as part of his Bankruptcy Case) may have provided (or caused various entities to provide) false or materially incomplete information to secure COVID-19 Economic Injury Disaster Loans (EIDL) by such entities.

### COUNT I – NON-DISCHARGEABILITY OF THE ATTORNEY'S FEE ORDER
### (Pursuant to 11 U.S.C. § 523(a)(2)(A))

66.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

67.     In pertinent part, section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, or false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

68.     On December 2, 2016, the NJ Court entered the Attorneys' Fees Order.

69.     Pursuant to the Attorneys' Fees Order, the NJ Court ordered that Farrell and Debtor pay Plaintiffs' reasonable attorneys' fees in the amount of $5,250.

70.     The relief provided in the Attorneys' Fee Order was entered pursuant to N.J. Stat. § 2A:15-59.1.

71.     Attorneys' fees awarded are awarded pursuant to N.J. Stat. § 2A:15-59.1 "if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."

72.     In connection with the Attorneys' Fee Order, the NJ court found that the Debtor Complaint was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury" Debtor "knew, or should have known, that the [Complaint] was without

any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."

73.     The NJ Court further found that the Debtor Complaint was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury" Debtor "knew, or should have known, that the [Complaint] was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *See* N.J. Stat. § 2A:15-59.1(b).

74.     Debtor engaged in false pretenses, or false representation, or actual fraud by commencing filing the Debtor Complaint, which resulted in the Attorneys' Fee Order and the damages to Plaintiff stemming therefrom.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Attorneys' Fees Order under 11 U.S.C. § 523(a)(2)(A), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT II – NON-DISCHARGEABILITY OF THE ATTORNEY'S FEE ORDER
### (Pursuant to 11 U.S.C. § 523(a)(6))

75.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

76.     Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

77.     On December 2, 2016, the NJ Court entered the Attorneys' Fees Order.

78.     Pursuant to the Attorneys' Fees Order, the NJ Court ordered that Farrell and Debtor pay Plaintiffs' reasonable attorneys' fees in the amount of $5,250.

79.     The relief provided in the Attorneys' Fee Order was entered pursuant to N.J. Stat. § 2A:15-59.1.

80.     Attorneys' fees awarded are awarded pursuant to N.J. Stat. § 2A:15-59.1 "if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."

81.     In connection with the Attorneys' Fee Order, the NJ court found that the Debtor Complaint was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury" Debtor "knew, or should have known, that the [Complaint] was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."

82.     The NJ Court further found that the Debtor Complaint was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or **malicious injury**" Debtor "knew, or should have known, that the [Complaint] was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *See* N.J. Stat. § 2A:15-59.1(b) (emphasis added).

83.     The Debtor Complaint was a willful, intentional, and malicious attempt to injure Plaintiffs, which resulted in the Attorneys' Fee Order and the damages to Plaintiff stemming therefrom.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Attorneys' Fees Order under 11 U.S.C. § 523(a)(6), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT III – NON-DISCHARGEABILITY OF THE ORDER TO COMPEL
### (Pursuant to 11 U.S.C. §523(a)(2)(A))

84.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

85.  In pertinent part, section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, or false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

86.  Debtor engaged in false pretenses, false representation, or actual fraud during the course of discovery in the Debtor NJ Action and the Counterclaims.

87.  Debtor engaged in false pretenses, false representation, or actual fraud by refusing to produce his electronic data sources resulting in the Order to Compel and the damages to Plaintiff stemming therefrom.

88.  Plaintiffs incurred damages as a result of the Debtor's discovery misconduct.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Order to Compel under 11 U.S.C. § 523(a)(2)(A), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT IV – NON-DISCHARGEABILITY OF THE ORDER TO COMPEL
### (Pursuant to 11 U.S.C. §523(a)(6))

89.  Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

90.  Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

91.    Debtor engaged in willful, intentional and malicious conduct during the course of discovery in the Debtor NJ Action and the Counterclaims.

92.    Debtor's refusal to produce his electronic data sources was a willful, intentional and malicious attempt to injure Plaintiffs resulting in the Order to Compel and the damages to Plaintiff stemming therefrom.

93.    Plaintiffs incurred damages as a result of the Debtor's willful and malicious discovery misconduct.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Order to Compel under 11 U.S.C. § 523(a)(6), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT V – NON-DISCHARGEABILITY OF FORENSIC SEARCH COSTS ORDER
### (Pursuant to 11 U.S.C. § 523(a)(2)(A))

94.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

95.    Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

96.    Debtor engaged in false pretenses, false representation, or actual fraud as well as willful, intentional and malicious conduct during the course of discovery in the Debtor NJ Action and the Counterclaims.

97.    Debtor engaged in false pretenses, false representation, or actual fraud by filing a motion to shift costs of an independent forensic search forcing Plaintiffs to incur costs and expenses to oppose the baseless motion resulting in the Forensic Search Costs Order.

98.    Plaintiffs incurred damages as a result of the Debtor's discovery misconduct.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Forensic Search Costs Order under 11 U.S.C. § 523(a)(2)(A), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT VI – NON-DISCHARGEABILITY OF FORENSIC SEARCH COSTS ORDER
### (Pursuant to 11 U.S.C. § 523(a)(6))

99.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

100.     Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

101.     Debtor engaged in willful, intentional and malicious conduct during the course of discovery in the Debtor NJ Action and the Counterclaims.

102.     Moreover, Debtor's filing of the motion to shift costs of an independent forensic search was a willful, intentional and malicious attempt to injure Plaintiffs resulting in the Forensic Search Costs Order.

103.     Plaintiffs incurred damages as a result of the Debtor's discovery misconduct.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on the Forensic Search Costs Order under 11 U.S.C. § 523(a)(6), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT VII – NON-DISCHARGEABILITY OF COUNTERCLAIMS
### (Pursuant to 11 U.S.C. §§ 523(a)(2)(A))

104.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

105.     In pertinent part, section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit,

to the extent obtained by … false pretenses, or false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

106.    As set forth in the Counterclaim Complaint, Debtor engaged in false pretenses, false representation, or actual fraud.

107.    Specifically, Count V of the Counterclaim Complaint seeks damages as a result of Debtor's fraudulent conduct.

108.    Debtor's fraudulent conduct included, among other things, creating knowingly false spreadsheets, circulating the false spreadsheets to PAF and PAF's officers, and making false statements to a government entity. *See* Counterclaim Complaint ¶ 182.

109.    As a result of Debtor's fraudulent conduct, Plaintiffs have suffered monetary damages set forth in Count V of the Counterclaim Complaint and incurred attorneys' fees in bringing the Counterclaims.

110.    Debtor intended to cause this loss to Plaintiffs from his fraudulent actions.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on Count V (Fraud) of the Counterclaim Complaint under 11 U.S.C. § 523(a)(2)(A), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT VIII – NON-DISCHARGEABILITY OF COUNTERCLAIMS
### (Pursuant to 11 U.S.C. §§ 523(a)(6))

111.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

112.    Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6).

113.    As set forth in the Counterclaim Complaint, intentionally, voluntarily, wrongfully, and without just cause participated in the misconduct at issue in the Counterclaims.

114.    Count I of the Counterclaim Complaint seeks damages as a result of Debtor's tortious interference with contract and prospective economic advantage.

115.    Debtor's tortious interference with contract and prospective economic advantage resulted from, among other things, Debtor's intent to misappropriate PAF's confidential information is to benefit themselves and injure PAF.  *See* Counterclaim Complaint ¶ 130.

116.    Count II of the Counterclaim Complaint seeks damages as a result of Debtor's breach of duty of loyalty.

117.    Debtor breached his duty of loyalty by, among other things, engaging in grossly negligent conduct and failing and simply refusing to fulfill his responsibilities, and engaging in intentional acts of misappropriating customer and prospect contacts for his own personal use, using company resources to promote his wife's business and fund her travel, and intentionally sabotaging the efforts of the fund to raise funds.  *See* Counterclaim Complaint ¶ 140.

118.    Count III of the Counterclaim Complaint seeks damages as a result of Debtor's common law misappropriation of trade secrets.

119.    Debtor misappropriated trade secrets by, among other things, using PAF's confidential information to solicit customers, prospective customers, investors and prospective investors.  *See* Counterclaim Complaint ¶ 152.

120.    Count IV of the Counterclaim Complaint seeks damages as a result of Debtor's breach of his nondisclosure agreement with PAF.

121. Debtor breached his nondisclosure agreement by, among other things, using PAF's confidential information to solicit customers, prospective customers, investors and prospective investors. *See* Counterclaim Complaint ¶ 168.

122. As a result of Debtor's willful and malicious misconduct, Plaintiffs have suffered monetary damages set forth in Counts I-IV of the Counterclaim Complaint and incurred attorneys' fees in bringing the Counterclaims.

123. Debtor intended to cause this loss to Plaintiffs from his fraudulent actions.

WHEREFORE, the Plaintiffs request that the Court (i) deny the dischargeability of Debtor's debt to Plaintiffs based on Counts I-IV of the Counterclaim Complaint under 11 U.S.C. § 523(6), and (ii) grant such other and further relief that this Court deems necessary and just.

## COUNT IX – OBJECTION TO DISCHARGE
### (Pursuant to 11 U.S.C. § 727(a)(4)(A))

124. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above.

125. Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor shall not receive the benefit of a discharge if he or she knowingly and fraudulently makes a false oath or account in or in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4)(A).

126. Upon information and belief, and as will be further investigated during the discovery process in this action, Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, specifically with regard to his improper collection of unemployment from the state of New Jersey while residing in Florida.

127. Plaintiff is also informed and believes that Debtor knowingly and fraudulently intentionally failed to list assets and financial information in his Schedules and SOFA, including

but not limited to his improper collection of unemployment and his ownership interest in Lead Hero.

WHEREFORE, the Plaintiffs request that the Court deny Debtor a discharge under section 727(a)(4)(A) of the Bankruptcy Code.

[*Plaintiff Verification and Attorney Signatures on following pages*]

Dated:  July 19, 2023

REED SMITH LLP

*/s/ Derek J. Baker*
**REED SMITH LLP**
Derek J. Baker (*admitted pro hac vice*)
1717 Arch Street
Suite 3100
Philadelphia, PA 19103
Tel: 215-851-8148
Facsimile: 215-851-1420
Email: dbaker@reedsmith.com


-and-


*/s/ Alexis A. Leventhal*
Alexis A. Leventhal (Fla. Bar No. 108064)
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  aleventhal@reedsmith.com

*Counsel for MicroBilt Corporation and*
*Princeton Alternative Funding, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    Chapter 7

ROBERT W. SZOSTAK                                 Case No. 22-11098-MAM

           Debtor.
_____/

MICROBILT CORPORATION and PRINCETON
ALTERNATIVE FUNDING, LLC,                        Adv. No.

           Plaintiffs,

v.

ROBERT W. SZOSTAK

           Defendant.
_____/

I John Cook, Jr., being of full age and with full capacity, certify and says as follows:

    1.  I am an Authorized Signatory for Princeton Alternative Funding, LLC a plaintiff

in the within action.

    2.  I have read the factual allegations related to the undersigned in the within

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR AND DISCHARGEABILITY**

**OF DEBT** and they are true based upon my personal knowledge, except for those allegations made

upon information and belief, which allegations I believe to be true.

    3.  I certify that the forgoing statements made by me are true.  I am aware that if

any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March _____7____, 2023

                      By: _____
                         Name:  John Cook, Jr.
                         Authorized Signatory

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flmb.uscourts.gov**

In re:                                                   Chapter 7

ROBERT W. SZOSTAK                      Case No. 22-11098-MAM

                    Debtor.
_____/

MICROBILT CORPORATION and PRINCETON
ALTERNATIVE FUNDING, LLC,                  Adv. No.

                    Plaintiffs,
v.

ROBERT W. SZOSTAK

                    Defendant.
_____/

I Walter Wojciechowski, being of full age and with full capacity, certify and says as follows:

1. I am an Authorized Signatory for Microbilt Corp. a plaintiff in the within action.

2. I have read the factual allegations related to the undersigned in the within

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR AND DISCHARGEABILITY**

**OF DEBT** and they are true based upon my personal knowledge, except for those allegations made

upon information and belief, which allegations I believe to be true.

3. I certify that the forgoing statements made by me are true. I am aware that if

any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 8th , 2023

By: _Walter Wojciechowski, CEO_
Name: Walter Wojciechowski
Authorized Signatory _MICROBILT CORP_
_CEO_

- 22 -